1
2
3
4
5
6
7                    **IN THE UNITED STATES DISTRICT COURT**
8                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**
9
10   KENNETH R. HENRY,                        No. 2:12-cv-2828-CMK-P
11          Plaintiff,
12      vs.                                   <u>ORDER</u>
13   PETER VANNI, et al.
14          Defendants.
15   _____/
16          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42
17   U.S.C. § 1983.   Plaintiff has consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. §
18   636© and no other party has been served or appeared in the action.   Pending before the court is
19   plaintiff's complaint (Doc. 1).
20          The court is required to screen complaints brought by prisoners seeking relief
21   against a governmental entity or officer or employee of a governmental entity.   <u>See</u> 28 U.S.C.
22   § 1915A(a).   The court must dismiss a complaint or portion thereof if it: (1) is frivolous or
23   malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief
24   from a defendant who is immune from such relief.   <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).   Moreover,
25   the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain
26   statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

1  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne,

2  84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied

3  if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon

4  which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must

5  allege with at least some degree of particularity overt acts by specific defendants which support

6  the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

7  impossible for the court to conduct the screening required by law when the allegations are vague

8  and conclusory.

9

10  ## I.  PLAINTIFF'S ALLEGATIONS

11          Plaintiff claims the defendants named in his complaint are subjecting him to cruel

12  and unusual punishment by transferring him to different cells numerous times, applied excessive

13  force, and placed him in a life and death situation.  He does not claim any actual use of force,

14  rather just complains about his cell being changed numerous times, which he contends somehow

15  endangered him.

16

17  ## II.  DISCUSSION

18          The treatment a prisoner receives in prison and the conditions under which the

19  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

20  and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

21  511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

22  of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

23  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

24  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

25  "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

26  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

1   when two requirements are met: (1) objectively, the official's act or omission must be so serious

2   such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

3   subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

4   inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

5   official must have a "sufficiently culpable mind."  See id.

6           When prison officials stand accused of using excessive force, the core judicial

7   inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline,

8   or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992);

9   Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as

10  opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims,

11  is applied to excessive force claims because prison officials generally do not have time to reflect

12  on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475

13  U.S. at 320-21.  In determining whether force was excessive, the court considers the following

14  factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship

15  between the need for force and the amount of force used; (4) the nature of the threat reasonably

16  perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.

17  See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force

18  was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.

19  1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally,

20  because the use of force relates to the prison's legitimate penological interest in maintaining

21  security and order, the court must be deferential to the conduct of prison officials.  See Whitley,

22  475 U.S. at 321-22.

23          Plaintiff's claims that he was subject to excessive force by being reassigned to

24  different cells numerous times.  However, nothing in his complaint indicates any force was ever

25  used.  Rather, it appears he was fearful of being placed with a dangerous cellmate, and that the

26  defendants were attempting to find a dangerous cellmate to house him with deliberately.  Thus,

3

1  perhaps he is attempting to state a failure to protect claim.

2         Under thee principles outlined above, prison officials have a duty to take

3  reasonable steps to protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237,

4  1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements

5  are met:  (1) objectively, the prisoner was incarcerated under conditions presenting a substantial

6  risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See

7  Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the

8  knowledge element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials

9  are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See

10 Farmer, 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that

11 prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of

12 more than a mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).

13 Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison

14 officials actually knew of a substantial risk, they are not liable if they took reasonable steps to

15 respond to the risk, even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

16        Plaintiff apparently contends he was reassigned cells numerous times, and the

17 defendants did so with the intention of finding a cellmate for plaintiff who dangerous.  While

18 such allegations may satisfy the subjective requirement, plaintiff fails to allege that any of the

19 cellmates he was housed with actually presented a risk of harm.  There is no allegation that any

20 harm was attempted, that he actually came to any harm at the hands of his numerous cellmates,

21 nor that any of the cellmates actually posed a threat.  Thus, his claim in inadequate.

22        Additionally, plaintiff fails to identify who used the excessive force against him.

23 Instead, most of his defendants are supervisory, and he claims they are responsible for failure to

24 properly supervise or train.

25        To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual

26 connection or link between the actions of the named defendants and the alleged deprivations.

1   See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

2   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

3   meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or

4   omits to perform an act which he is legally required to do that causes the deprivation of which

5   complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and

6   conclusory allegations concerning the involvement of official personnel in civil rights violations

7   are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the

8   plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged

9   constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

10          Supervisory personnel are generally not liable under § 1983 for the actions of their

11  employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

12  respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

13  violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

14  Supreme Court has rejected the notion that a supervisory defendant can be liable based on

15  knowledge and acquiescence in a subordinate's unconstitutional conduct because government

16  officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

17  and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

18  Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation

19  of constitutional rights and the moving force behind a constitutional violation may, however, be

20  liable even where such personnel do not overtly participate in the offensive act.  See Redman v.

21  Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

22          When a defendant holds a supervisory position, the causal link between such

23  defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

24  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

25  1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel

26  in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

1    Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the

2    official's own individual actions, has violated the constitution." Iqbal, 129 S.Ct. at 1948.

3             Finally, plaintiff attaches almost 100 pages of unnecessary exhibits to his

4    complaint. As discussed above, Rule 8 requires a complaint contain a short and plain statement

5    of the claim. Evidentiary support is not required at the pleading stage, and attaching numerous

6    exhibits to the complaint does not satisfy the requirement of Federal Rule of Civil Procedure 8(a)

7    that claims must be stated simply, concisely, and directly. To the contrary, it would require the

8    court to comb through the documents in order to guess at plaintiff's claims. The court is

9    unwilling to do this in part due to limited judicial resources but also because it is for plaintiff –

10    not the court – to formulate his claims.

11

12                          **III. CONCLUSION**

13             Because it is possible that the deficiencies identified in this order may be cured by

14    amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire

15    action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is

16    informed that, as a general rule, an amended complaint supersedes the original complaint. See

17    Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to

18    amend, all claims alleged in the original complaint which are not alleged in the amended

19    complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if

20    plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make

21    plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be

22    complete in itself without reference to any prior pleading. See id.

23             If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

24    conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See

25    Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how

26    each named defendant is involved, and must set forth some affirmative link or connection

1  between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

2  164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

3          Finally, plaintiff is warned that failure to file an amended complaint within the

4  time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at

5  1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply

6  with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b).

7  See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

8          Accordingly, IT IS HEREBY ORDERED that:

9          1.      Plaintiff's complaint is dismissed with leave to amend; and

10         2.      Plaintiff shall file an amended complaint within 30 days of the date of

11  service of this order.

12

13   DATED:  December 3, 2013

14                                                  _____

15                                                  **CRAIG M. KELLISON**
                                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26